IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

IN RE: OSCAR A. STILLEY
ARKANSAS BAR NUMBER 91096

Civil No. 08-MC-0005

O R D E R

Now on this 1st day of May, 2008, comes on for consideration the Court's **Order To Show Cause** (document #1), and  Oscar A. Stilley's **Showing Of Cause Why A Reciprocal Suspension Is Not Warranted** (document #5)("Showing Of Cause") in this matter, and from said documents, the Court finds and orders as follows:

1.   On December 27, 2007, a panel of the Arkansas Supreme Court Committee on Professional Conduct (the "Committee") voted to initiate disbarment proceedings against attorney Oscar A. Stilley ("Stilley"), and further voted to impose an interim suspension of Stilley's privilege to practice law under the authority of his Arkansas law license.  The matter bears CPC Docket No. 2006-067.

On January 16, 2008, this Court received notice of the suspension of Stilley's Arkansas license and the initiation of the disbarment proceedings, and issued the Order To Show Cause now under consideration.

2.   When an attorney admitted to practice before this Court is disciplined by another court, **Rule II(D)** of this Court's **Model Federal Rules of Disciplinary Enforcement** provides that this Court

"shall impose the identical discipline" unless the Court finds from "the face of the record" upon which the discipline is predicated that one of four situations "clearly appears," to-wit:

* that the procedure leading to the discipline was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

* that the proof upon which such discipline was based is so lacking in substance that this Court cannot accept it as a final conclusion on the matter;

* that the imposition of such discipline would result in grave injustice; or

* that misconduct is established but it warrants a substantially different discipline.

3. Pursuant to **Rule II**, this Court issued its Order To Show Cause, directing Stilley to "show cause . . . why the identical discipline imposed by the Committee of the Arkansas Supreme Court should not be imposed by this Court."  The Order To Show Cause cautions that "failing such showing, the Court will forthwith enter an Order effecting an identical suspension from practice before this Court."

As can be seen from **Rule II** and from the Court's Order To Show Cause, the burden of proof in this matter rests upon Stilley to show, by clear evidence, why this Court should not suspend him based on the discipline imposed by the Committee.

-2-

4.    In his Showing Of Cause, Stilley sets forth four reasons why this Court should not also impose the Committee's interim suspension, set to run "until the Arkansas Supreme Court has received an affirmative vote by a majority of the Committee":[1]

*    "REASON #1, THE ARKANSAS SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT REFUSED TO CONSIDER AND ADJUDICATE ANY OF THE CONSTITUTIONAL ARGUMENTS RAISED BY OSCAR STILLEY";

*    "REASON #2, THE ARKANSAS SUPREME COURT JUSTICES USURPED THE ROLE OF THE CHAIR OF THE RELEVANT PANEL, AND DENIED DUE PROCESS, BY SUMMARILY QUASHING A SUBPOENA OF ONE OF THE JUSTICES";

*    "REASON #3, OSCAR STILLEY WAS PUNISHED BASED ON THE DESIRE OF THE ARKANSAS SUPREME COURT JUSTICES RATHER THAN ANY VIOLATION OF ANY RULE OR LAW"; and

*    "REASON #4, OSCAR STILLEY'S LICENSE WAS ISSUED BY A GOVERNMENT AGENCY; THEREFORE, A NON-GOVERNMENTAL ENTITY HAS NO RIGHT TO SUSPEND THAT LICENSE."

For the reasons set forth below, the Court finds that none of these arguments is sufficient to prevent the imposition of identical discipline under the **Model Federal Rules of Disciplinary Enforcement.**

5.    At the outset, the Court believes it will be helpful to

---

[1]In addition to these arguments, Stilley asserts that he "claims the benefits of any arguments made in the response to the show cause order related to CPC 2002-077, if this matter is not concluded by the time that the response to that show cause order is filed."  Having already formally denied a motion to consolidate the two matters, the Court declines Stilley's invitation to informally consolidate them, and will consider only those arguments raised by Stilley in this case with regard to the Show Cause Order in this case.

delineate what is subsumed in the concept of due process, as it applies to attorney discipline procedures in general and Stilley's case in particular.

Because attorney suspension and disbarment are penalties imposed on a lawyer, it has long been the rule that he is entitled to procedural due process in their imposition, i.e., notice of the charges against him, and an opportunity to explain and defend against them. See **In re Ruffalo**, **390 U.S. 544, 550 (1968)**. Indeed, "[t]he essence of due process is the requirement that a person in jeopardy of a serious loss [be given] notice of the case against him and opportunity to meet it." **Mathews v. Eldridge**, **424 U.S. 319, 348 (1976)** (citation omitted).

Due process is not, however, "a technical conception with a fixed content unrelated to time, place and circumstances." It is "flexible and calls for such procedural protections as the particular situation demands," taking into consideration the private interest affected, the risk of erroneous deprivation, the probable value of procedural safeguards, and the government interest. ***Id.,* 424 at 334-35.**

Matters of attorney discipline, it may be said without citation to authority, involve important interests both private and governmental, calling for fairly rigorous procedures to reduce the risk of erroneous deprivation. However, as pointed out by the Arkansas Supreme Court in **Stilley v. Supreme Court Committee on**

**Professional Conduct**, 370 Ark. 294, --- S.W.3d ---, **2007 WL 1775697 (2007),** under Arkansas law "the practice of law is a privilege, not a right," and protections to that right are subject to the lowest level of constitutional scrutiny.   In **Stilley v. Supreme Court Committee**, the Court found no due process violation in another matter involving Stilley, because he

> (1) received notice of the complaint and charges against him, (2) was notified of Panel A's decision, (3) requested and received a public hearing before Panel B, (4) attended the hearing, at which he represented himself, and (5) was allowed to present evidence on his behalf.

**370 Ark. at ---.**

6. The process provided by the Arkansas **Procedures Regulating Professional Conduct** (the "Procedures") for the handling of formal complaints against attorneys - as relevant to Stilley's case - is as follows:

\* Any complaint against an attorney is first investigated by the Executive Director, and if it is found to fall within the purview of the Committee and to be "supported by sufficient evidence," a formal complaint is prepared.[2]

\* The attorney who is the subject of the complaint (the "Respondent") is served with a copy of the complaint, and has twenty days in which to file a written response.

\* The complainant then has an opportunity to rebut the

---

[2]The Executive Director may divert complaints to "alternatives-to-discipline" programs if only "lesser misconduct as defined in Section 17(c)" is involved.

Respondent's response.

* The complaint, response, and any rebuttal are then submitted to a panel of seven members of the Committee ("Panel A"), who vote by paper ballot on the action they believe should be taken.

* If Panel A votes to caution, reprimand, or suspend the Respondent, the Respondent has a right to a *de novo* public hearing before a new panel ("Panel B"), none of whose members were members of Panel A.

* At the conclusion of this public hearing, Panel B deliberates and votes in executive session, and its decision is announced immediately.

* If Panel B votes to caution, reprimand, or suspend, the Office of Professional Conduct prepares, with the advice and consent of Panel B, a document entitled Findings And Order, which is filed as a public record.[3]

* The Respondent may appeal any decision of Panel B except a vote to disbar.

* If Panel B votes to disbar, an action for disbarment is filed as an original action in the Arkansas Supreme Court, and a special judge is appointed to preside. This judge makes findings of fact, conclusions of law, and recommendations regarding sanctions to the Arkansas Supreme Court. The parties may submit

---

[3] Curiously, Stilley did not include this important document in his Showing Of Cause.

briefs, whereupon the Arkansas Supreme Court determines, on the record submitted, what sanction, if any, is warranted.

7.   The first Reason offered by Stilley in his Showing Of Cause is that the Committee refused to consider and adjudicate his constitutional arguments.  The procedural history of this case belies this argument, indicating that these arguments -- to the extent Stilley presented them -- were considered on three separate occasions.

(a)  Stilley filed an Answer To Amended Complaint, in which he responded to each of the ethical charges of the Committee in CPC Docket No. 2006-067 in great detail, with factual assertions, legal citations, and argument.  This document, included in Stilley's Showing Of Cause, purports to recite verbatim the allegations of the Amended Complaint, followed by his responses thereto.  From this document it is apparent that Stilley had both notice of the ethical violations of which he was accused, and unlimited space to present whatever arguments he had in rebuttal of them.

(b)  When Panel A made its decision, Stilley apparently was not satisfied, because he afforded himself of the opportunity for a public hearing on the charges.  He was there able to present both evidence and argument in his behalf.  While Stilley contends that Panel B refused to consider or adjudicate his constitutional arguments, this contention rests on faulty grounds.  When the

-7-

Executive Director rested his case at the public hearing, Stilley moved for a directed verdict. The Chair denied this motion; indicated that he would not make any ruling on Stilley's argument that the Committee was not a governmental agency and therefore not empowered to suspend or disbar; and would not allow him to state further grounds for directed verdict, instructing him instead to call his witnesses and make any desired proffer of further argument after the Panel retired to deliberate.

Stilley clearly wanted to present other arguments. He informed the Chair that he had "a whole slew of motions here," and that he "certainly wouldn't have shut my mouth and asked for a ruling except for the purpose that I thought it would be easier for this Court to do things in a meaningful way. Take little chunks of it." This, of course, is not the way motions for directed verdict are typically handled, and there is no evidence that the Chair agreed to piecemeal the various arguments apparently subsumed in Stilley's motion for directed verdict.

When put in proper perspective, Stilley's position is not that the Panel refused to hear and rule on his constitutional arguments, but rather that it refused to hear those arguments at the time and in the manner that Stilley wanted to present them. What Stilley complains of does not amount to a due process violation, but is, rather, the result of a judicial officer maintaining appropriate control of the tribunal, albeit with the

result that the litigant did not get to present some of his arguments because he wanted to do things his own way.

Furthermore, in spite of being invited by the Panel to make a proffer of his constitutional arguments at the conclusion of the hearing, Stilley did not proffer any arguments that took on constitutional dimensions. Instead, he made a proffer of only two arguments, both of which were garden-variety arguments for a directed verdict. These arguments were heard and ruled upon, the Chair specifically stating that "the Petitioner has stated and given a prima facia [sic] case in the Complaint and also under Sections 11 and 17 of the rules, professional conduct rules."

(c) Finally, although such is not provided for in the **Procedures**, Stilley filed with Panel B a document entitled Verified Affidavit And/or Motion For Stay Of Interim Suspension, Motion For Findings Of Fact And Conclusions Of Law, Motion For Reconsideration, Withdrawal, Quashing, Or Striking Of The Referral For Disbarment, For Order Dismissing The Complaint With Prejudice, And For Other Relief ("Verified Affidavit"). This document was considered and denied by Panel B.

It can, thus, be seen that in addition to notice of the charges against him, Stilley had not one but three opportunities to meet them. Stilley himself maintains that he filed "two lengthy pleadings laying out the arguments with reasoning and authority." While Stilley may not have received a specific ruling

on every argument presented in his Answer To Amended Complaint,
the public hearing, or his Verified Affidavit, such is not
required by the principles of due process.  His arguments were
presented to the tribunal, and were found unpersuasive.

For the foregoing reasons, the Court is not persuaded by
Stilley's first Reason.

8.   Stilley's second Reason is that the Justices of the
Arkansas Supreme Court "usurped" the role of the Chair of Panel B,
and denied him due process, by summarily quashing a subpoena for
Justice Tom Glaze.

This argument relies on **Section 8** of the **Procedures**, which
provides that "[d]isputes concerning discovery shall be determined
by the chair of the panel to which the matter was assigned."  The
subpoena in question was not a deposition subpoena, however, but
a subpoena to appear at the public hearing, making **Section 8**
inapplicable.  Thus, Stilley's second Reason is without merit.

9.   Stilley's third Reason is his contention that he was
punished based on the desire of the Justices, rather than for
violation of any rule or law.  His theory here is that no specific
rule in the **Arkansas Rules Of Professional Conduct** forbids the use
of strident, disrespectful, intemperate language.  He does not
deny that the language in question was inappropriate, but rather
attacks the ruling as one based on rules which were made up by the
Panel "as it goes along."

-10-

This argument overlooks the clear and specific language of **White v. Priest**, **348 Ark. 135, 348 Ark. 783, 73 S.W.3d 572, 581 (2002),** wherein the Arkansas Supreme Court stated that a brief filed by Stilley which contained disrespectful, intemperate, and distasteful language was "an inexcusable breach of the obligation of professional conduct that this court expects of the members of the bar" and "implicates a breach of the Model Rules of Professional Conduct." Another case decided that same year was of the same import:  "Just as we will not allow a lawyer to show disrespect for the judges sitting in circuit courts, we will not allow an attorney to show disrespect for the members of this court." **Davenport v. Lee**, **349 Ark. 113, 115, 76 S.W.3d 265, 266 (2002).**

**Model Rule 3.4(c)** prohibits the knowing disobedience to "an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." The quoted language of **White v. Priest** constitutes "an obligation under the rules of a tribunal."

In addition, the Court finds that the use of strident, disrespectful, intemperate, or distasteful language violates the spirit of **Arkansas Rules of Professional Conduct.** The **Preamble** thereto provides:

*    "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers

and public officials." (¶6)

    *    "[B]asic principles underlying the Rules" include "the lawyer's obligation to zealously protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system." (¶9)

    *    "A lawyer owes a solemn duty . . . to encourage respect for the law and for the courts." (¶13A]

It is a familiar rule of law that an act may be within the letter of the law yet not within the law, because not within the spirit of the law or the intention of its makers. **California Federal Savings and Loan Association v. Guerra**, **479 U.S. 272, 284 (1987).** The use of strident, disrespectful, intemperate, or distasteful language, as directed toward any judge, violates the spirit of the **Rules** as expressed in the **Preamble** provisions quoted above, and, as pointed out in **Stilley v. Supreme Court Committee**, Stilley took an oath to abide by not just the letter but also the spirit of the ethical rules when he received his attorney's license.

For all these reasons, the Court concludes that Stilley's third Reason is without merit.

10. Stilley's fourth and final Reason is that the Committee is not a governmental agency, and, therefore, has no right to suspend his government-issued license to practice law. This

Reason is premised on a letter from Stark Ligon, Executive Director of the Committee, in which a Freedom of Information Act request by Stilley was denied because "this office is not a governmental agency." Stilley contends that the State of Arkansas issued his license, and only the State of Arkansas can suspend it.

The Court finds no merit in this contention. In the State of Arkansas, when an applicant for admission to the bar is found to be eligible for admission by the State Board of Law Examiners, that fact is certified to the Clerk of the Arkansas Supreme Court, who then issues the license. **Rule XIII(C)** of **Rules Governing Admission to the Bar**. The Committee is a committee of the Arkansas Supreme Court with jurisdiction over all attorneys licensed to practice law in the State of Arkansas. **Section 1, Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law**. The Court has "granted [its] authority to regulate the Arkansas legal profession to the Committee." **Stilley v. Supreme Court Committee**, *supra*. It can thus be seen that both the licensing and the restricting of licensure for attorneys in Arkansas are handled by agents of the Arkansas Supreme Court.

11. While Stilley's Reasons primarily implicate the due process factor of **Rule II**, the Court has also considered whether Stilley has made any showing that would suffice under the other three factors, and finds he has not.

(a)  With regard to the sufficiency of the evidence, Stilley has not presented either the transcript of the evidence at the public hearing, nor the Committee's Findings And Order, so the Court is unable to conclude that the proof before the Committee was so lacking in substance that this Court could not accept it as a final conclusion on the matter.

(b)  With regard to whether the imposition of suspension by this Court would result in grave injustice, the Court notes Stilley's complaint that the **Procedures** do not allow an appeal from the decision of a hearing panel to file an action for disbarment.  As the Court understands the matter, once the Panel votes to disbar, and interim suspension is imposed, the Respondent has no recourse by appeal or otherwise until disbarment proceedings have run their course.

While this circumstance certainly poses a hardship on the subject attorney, the Court does not find that it amounts to a "grave injustice."  The vote to disbar is not a hasty decision, but rather one reached only after multiple layers of procedural protections, as outlined at ¶6, *supra,* have been afforded. Interim suspension "provides a means to preclude an attorney from practice while further action is undertaken by the Committee." **Wood v. Supreme Court Committee on Professional Conduct, 343 Ark. 696, 699, 38 S.W.3d 310, 313 (2001).**

(c)  Finally, the Court has considered whether Stilley's

-14-

conduct, as established by the Committee, warrants a substantially different discipline than that imposed by the Committee.  It is hampered in this inquiry by the absence of the Committee's Findings And Order, but guided by existing case law.

As noted in **Matter of Caranchini**, **160 F.3d 420, 424 (8th Cir. 1998)**, "federal courts generally defer to state court findings in disbarment proceedings and typically impose the identical discipline."  In **In re Hoare**, **155 F.3d 937, 940 (8th Cir. 1998)**, the court noted that "[a]lthough a state court disciplinary action is not conclusively binding upon the federal judiciary, federal courts are nevertheless obliged to accord a high level of deference to state court disbarment proceedings."

Stilley offers no cogent reason why this Court should not defer to the decision of the Committee in his case, nor does this Court perceive such.

12.  Having considered the matters placed before it, the Court finds no reason under **Rule II** that it should not impose upon Stilley the identical discipline imposed by the Committee.

**IT IS THEREFORE ORDERED** that Oscar A. Stilley has failed to show cause why this Court should not impose upon him the identical discipline imposed by the Arkansas Supreme Court Committee on Professional Conduct, and he is hereby suspended from practice in the United States District Courts for the Eastern and Western Districts of Arkansas unless and until his license to practice is

-15-

reinstated by the Arkansas Supreme Court.

**IT IS SO ORDERED.**

      **/s/ Jimm Larry Hendren**

**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**